KIRK B. LENHARD, ESQ., Bar No. 1437
klenhard@bhfs.com
TAMARA BEATTY PETERSON, ESQ., Bar No. 5218
tpeterson@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614
Telephone:  702.382.2101
Facsimile:   702.382.8135

STEVE MORRIS, ESQ., Bar No. 1543
SM@morrislawgroup.com
Ryan M. Lower, Bar No. 9018
RML@morrislawgroup.com
MORRIS LAW GROUP
300 S. Fourth St. #900
Las Vegas, NV 89101
Telephone: 702.474.9400
Facsimile:   702.474.9422

*Attorneys for Defendants Renown Health, Renown Regional Medical Center, Nevada Heart Institute, Hometown Health Plan and David Line*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ST. MARY'S REGIONAL MEDICAL CENTER, a Nevada corporation; and ST. MARY'S MEDICAL GROUP INC., a Nevada professional corporation; RICHARD H. BRYAN, JR., M.D., F.A.C.C.; FRANK P. CARREA, M.D., F.A.C.C.; RAM M. CHALLAPALLI, M.D., F.A.C.C.; SRIDEVI CHALLAPALLI, M.D., F.A.C.C.; DEVANG M. DESAI, M.D., F.A.C.C.; ERIC M. DRUMMER, M.D., F.A.C.C.; JOSEPH STEVENSON, D.O., F.A.C.C.; and KOSTA M. ARGER, M.D., <br><br>             Plaintiffs, <br><br> vs. <br><br> RENOWN HEALTH, a Nevada non-profit corporation; RENOWN REGIONAL MEDICAL CENTER, a Nevada non-profit corporation; NEVADA HEART INSTITUTE, a | **CASE NO.:** <br><br> **NOTICE OF REMOVAL** |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Nevada non-profit corporation; HOMETOWN HEALTH PLAN, a commercial health insurance company; DAVID LINE, an individual; JAMES I. MILLER, an individual; KELLY TESTOLIN, an individual; ANDREW PEARL, an individual; and DOES I through X,

**Defendants.**

TO THE CLERK OF THE COURT:

PLEASE TAKE NOTICE that defendants Renown Health ("Renown Parent Entity"), Renown Regional Medical Center ("Renown Regional"), Nevada Heart Institute ("NHI"), Hometown Health Plan ("HHP"), all non-profit entities, and David Line ("Line"), president of the Renown Parent Entity (collectively "Renown" or the "Removing Defendants"), hereby remove the state court action described below from the Second Judicial District Court for the State of Nevada in and for the County of Washoe to the United States District Court for the District of Nevada, Northern Division, 400 S. Virginia Street, Reno, NV 89501.

## I. PROCEDURAL HISTORY

1. On December 12, 2013, St. Mary's Regional Medical Center and St. Mary's Medical Group Inc. (collectively, "St. Mary's") and certain cardiologists employed by St. Mary's, Richard H. Bryan, Jr., Frank P. Carrea, Ram M. Challapalli, Sridevi Challapalli, Devang M. Desai, Eric M. Drummer, Joseph Stevenson and Kosta M. Arger (collectively, "Plaintiffs") sued the Removing Defendants; three other named-defendants, James I. Miller, Kelly Testolin, and Andrew Pearl (the "Other Named Defendants"); and Doe Defendants I through X in the Second Judicial District Court for the State of Nevada in and for the County of Washoe, Case No. CV13 02632 (the "State Court Action").

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

2. On December 12, 2013, news media in Reno, Nevada reported the Plaintiffs' filing of the State Court Action.

3. On December 23, 2013, the Removing Defendants obtained from the Clerk of the Washoe County District Court a copy of the amended complaint in the State Court Action and all of its exhibits (the "Complaint"), a true and correct copy of which is annexed hereto as Exhibit A.

4. The Removing Defendants have not been served with process in the State Court Action.

5. The Removing Defendants are informed and believed that the Other Named Defendants, Miller, Pearl and Testolin, likewise, have not been served with process in the State Court Action. Hence, the Other Named Defendants need not join in removing the State Court Action. 28 U.S.C. 1446(2)(a); *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir.1984) ("Our circuit rule is that a party not served need not be joined") (superseded on other grounds); *Lefer v. Murry,* 2013 WL 2070877, at *3-*4 (D. Mont. May 14, 2013) (same).

6. The Removing Defendants have filed no responsive or other pleadings in the State Court Action. The Removing Defendants are informed and believe that the Other Named Defendants, likewise, have filed no responsive or other pleadings in the State Court Action.

**II.   SUMMARY OF PLAINTIFFS' CLAIMS FOR RELIEF**

7. Under Nevada law, "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." NRCP 10(c).

8. The Complaint does not, on its face, assert claims for relief under the Clayton Act, but by attaching the FTC complaint and incorporating it in the Complaint, and by operation of law under NRCP 10(c), the federal Clayton Act claims for relief are made part of the Complaint and subject the Complaint to removal.

## III. SUMMARY OF GROUNDS FOR REMOVAL

9. Because the Complaint, on its face, alleges claims for relief based on Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18, this action is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1337(a), which provides that "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

10. Because this Court has original jurisdiction pursuant to 28 U.S.C. § 1337(a), this action is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

11. By reason of the foregoing, this action may be removed to this Court pursuant to 28 U.S.C. § 1441(a), which provides, as relevant here, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

## IV. THE FIRST GROUND FOR REMOVAL: PLAINTIFFS ASSERT CLAIMS FOR RELIEF BASED ON SECTION 7 OF THE CLAYTON ACT.

### A. The parties.

12. St. Mary's is a privately-owned for profit hospital offering "adult cardiology services and . . .a broad range of adult cardiology sub-specialties in Washoe County." Complaint, ¶ 9.

13. "St. Mary's, on the one hand, and Renown — including through its wholly-owned subsidiary, NHI, and its captive commercial health insurance company, Hometown Health—on the other hand, are competitors

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

in the Northern Nevada market for the provision of adult cardiology services." *Id.* ¶ 29.

### B. The alleged "ongoing conspiracy to violate Federal and Nevada law."

14. Plaintiffs allege that, "[a]s a result of the monopolistic behavior of Renown, its ongoing conspiracy to violate Federal and Nevada law, and its purposeful and intentional malicious interference with St. Mary's business activities, Renown has caused and is causing St. Mary's to sustain substantial economic and financial damages." *Id.* ¶ 8. In describing the alleged "conspiracy to violate Federal" law, Plaintiffs allege, in part, as follows:

- Renown "engaged in monopolistic business activities . . . for the purposes of causing St. Mary's financial harm." *Id.* ¶ 1.
- "Renown has developed a business plan and scheme to destroy St. Mary's position in the area of cardiology." *Id.*
- "By acquiring all cardiology practices in the Reno-Sparks area, Renown was found to have knowingly violated § 7 of the Clayton Act, as amended, 15 U.S.C. § 18." *Id.*
- "The FTC had determined that Renown's acquisition of RHP [a corporation employing cardiologists] and employment of the RHP [cardiologists], after having acquired SNCA [another corporation employing cardiologists], did substantially lessen competition and created a monopoly in relevant markets. . . . " *Id.* ¶ 74.
- "After Renown was determined to be in violation of antitrust legislation by the Federal Trade Commission ('FTC'), Renown tried to interfere with and violate specific provisions of the FTC's Decisions and Orders with an intent to cause financial harm and damages to St. Mary's." *Id.* ¶ 6.

### C. Plaintiffs' assertion of claims for relief based on Section 7 of the Clayton Act.

15. Plaintiffs' Complaint, at ¶ 73, attached, and thereby, pursuant to NRCP 10(c), is made a part of their Complaint "for all purposes," an FTC complaint which alleged claims for relief based on Section 7 of the Clayton Act. Pursuant to NRCP 10(c), the following allegations, among others, of the FTC's complaint appear on the face of, and are an integral part of, Plaintiffs' Complaint:

> 1. Renown Health's acquisition of two cardiology groups in Reno, Nevada, SNCA and RHP, and the employment of the doctors who had formerly practiced in association with these medical group entities, is likely to lead to anticompetitive effects including increased prices and reduced non-price competition. This consolidation resulted in 15 of the cardiologists who had been associated with SNCA and 17 of the physicians who had been associated with RHP becoming employed of Renown Health.
>
> 2. Prior to the transactions at issue, SNCA and RHP, the two largest groups of physicians providing adult cardiology services in the Reno/Sparks, Nevada Metropolitan Statistical Area ("Reno area"), competed head-to-head to serve cardiology patients.
>
> 3. As a result of Renown Health's acquisition of SNCA in 2010 and the employment of the SNCA-affiliated cardiologists, Renown Health employed approximately 47% of the cardiologists serving private patients in the Reno area. As a result of Renown Health's subsequent acquisition of RHP in 2011 and employment of the RHP-affiliated cardiologists, Renown Health then employed approximately 97% of the cardiologists serving private patients in the Reno area. Renown Health's acquisition of RHP makes it likely that Renown Health will be able to exercise unilateral market power in the Reno area, which will result in higher prices and a reduction in non-price competition for the provision of cardiology services. . . .
>
> 7. Respondent Renown Health is, and at all times herein has been engaged in commerce or in activities in or affecting commerce within the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12. The acquisitions of SNCA and RHP constitute acquisitions under Section 7 of the Clayton Act, 15 U.S.C. § 18. . . .
>
> 11. On or about March 17, 2011, . . . a professional corporation doing business as Reno Heart Physicians was converted to a Nevada for-profit corporation. This corporation was then merged into Renown Health. In addition, Renown Health purchased certain of RHP's assets, for approximately $4

million. This merger of RHP into Renown Health ("RHP merger") became effective on or about March 29, 2011.

14. The effect of the acquisition of RHP by Renown Health was to combine 31 of the 32 cardiologist then practicing in the Reno area under Renown Health, the owner and operator of the largest hospital system in that area. . . .

25. The effects of Renown Health's acquisition of RHP and employment of the RHP physicians may be substantially to lessen competition and tend to create a monopoly in the relevant markets in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18 . . . .

27. *The transaction described in Paragraph 11, and Renown Health's subsequent employment of RHP doctors, described in Paragraph 12, constitute a violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18*. (Emphasis added.)

16. In sum, Plaintiffs' claim for relief alleges a "conspiracy to violate federal law," and alleges on the face of the complaint a claim that "arises under" federal law. *Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42 (1908) ("a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."). See *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425 (1987) ( in determining the presence or absence of federal jurisdiction, the Courts apply the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.").

17. Under the "well-pleaded complaint" rule, the plaintiff, as "master of the complaint," may "choose to have the cause heard in state court" "by eschewing claims based on federal law." *Caterpillar*, 482 U.S. at 398-99, 107 S.Ct. 2425. Under this rule, a clear and irrevocable election between state and federal claims must be made. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir.1995) (citations omitted):

A plaintiff with a choice between federal- and state-law claims may elect to proceed in state court on the exclusive basis of state

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

990005\0001\10926020.1

law, thus defeating the defendant's opportunity to remove, but taking the risk that his federal claims will one day be precluded.

18. The failure to make a clear and irrevocable election permits removal to federal court. *Nat'l Credit Reporting Ass'n Inc. v. Experian Info. Solutions*, 2004 WL 1888769, at *1-*3 (N.D.Cal. 2004) where the Court refused to remand a claim for relief alleging state-law unfair business practices where "the complaint asserted violations of state and federal antitrust laws . . . ." The Court emphasized that, "[a]s the master of its complaint, plaintiff could have avoided any issue of federal question and, instead, could have simply borrowed state antitrust laws," but "did not." *Id.* at *3.

19. The State Court Action is removable because Plaintiffs did not follow the rule under which "a plaintiff alleging facts that would support a claim founded upon either federal or state law is free to confine his claim to one based on state law and proceed in state court." *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 964 (2nd Cir 1981). *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 12, 123 S.Ct. 2058 (2003) (Scalia, J., dissenting) ("A federal question 'is presented' when the complaint invokes federal law as the basis for relief.").

20. In an attempt to avoid these rules, and to "have it both ways," *i.e.*, to file a well-pleaded complaint alleging federal claims for relief under the federal antitrust laws while avoiding federal court, Plaintiffs, at Complaint ¶ 1, aver that the federal antitrust laws are "not a claimed basis for relief." However, the next sentence of Complaint ¶ 1 alleges that Renown "knowingly violated § 7 of the Clayton Act, as amended, 15 U.S.C. § 18." *See* 16 Moore's Federal Practice § 107.14(b)(ii) ("plaintiff is free to allege only state law claims, only federal law claims, or both, in state court. If the plaintiff alleges only the state law claims, the action is not removable

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

6
NOTICE OF REMOVAL
990005\0001\10926020.1

as a federal question case. If the plaintiff alleges the federal claims, or both federal and state claims, the action is removable.").

## V. THE SECOND GROUND FOR REMOVAL: PLAINTIFFS' STATE-LAW CLAIM FOR RELIEF IS BASED ON SECTION 7 OF THE CLAYTON ACT.

21. "Even though state law creates [a party's] causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13, 103 S.Ct. 2841, 2848 (1983).

22. "[E]ven where a claim finds its origins in state rather than federal law," there is a "special and small category" of cases "in which arising under jurisdiction still lies." *Gunn v. Minton*, __U.S. ___, 133 S.Ct. 1059, 1064 (2013).

23. In this "special and small" category of "arising under" cases, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 1065. All four of these requirements (herein, "*Gunn* requirements") are met here.

### *Gunn* requirement one: A federal issue is "necessarily raised" by Plaintiffs' alleged state-law "conspiracy" claim.

24. The federal issue that is "necessarily raised" by Plaintiffs' alleged "conspiracy" claim (herein referred to as the "federal issue") is whether Plaintiffs can sue in state court to obtain relief based on an FTC order which Plaintiffs could not obtain in federal court, thereby defeating federal law and policy which encourages settlements with the FTC, *e.g.*,

(a) by providing, in 15 U.S.C. § 16, "that, in any action or proceeding brought under the antitrust laws, collateral estoppel effect shall not be given to any finding made by the Federal Trade Commission under the antitrust laws."

(b) by providing, in 15 U.S.C. § 16(a), that FTC settlements such as Renown's are not subject to the statutory rule of 15 U.S.C. § 16(a) under which an FTC decree is "prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto." *See* 3 Areeda & Hovenkamp, *Antitrust Law: Effect of Government Victory on Subsequent Private Suit* ¶327c (4th ed. 2013):

> 327c. Third-party enforcement or use.
>
> Third parties may not maintain an action for damages or initiate contempt proceedings for a defendant's violation of a consent decree. And while Clayton Act §5(a) allows a litigated decree to be used as prima facie evidence of liability in subsequent private actions against the defendant, *it explicitly prohibits that use of pretrial consent decrees.* Indeed, wherever liability has not been adjudicated, the consent decree almost invariably states that it is neither an adjudication on the merits nor an admission of liability on the part of the defendant. *In only a few cases has the government negotiated a nonlitigated consent decree in which the defendant admitted liability for the purpose of establishing the prima facie evidence effect in subsequent private suits. Generally, consent decrees have little impact in subsequent private litigation. They neither estop the defendant from litigating liability or further relief, nor prevent a private plaintiff from seeking relief that the consent decree* allows, although the legal and policy judgments reflected in the government consent decree are entitled to some deference. (Emphasis added.)

(c) by permitting the FTC to enter an order [see Complaint Exhibit 4 at SNCA 0018] providing as follows to protect Renown from the claims now being made by Plaintiffs based on "findings" allegedly made against Renown:

Respondent Renown, its attorneys, and counsel for the Commission having thereafter executed an Agreement Containing Consent Orders ("Consent Agreement"), containing an admission by Respondent Renown of all the jurisdictional facts set forth in the aforesaid draft Complaint, *a statement that the signing of said Consent Agreement is for settlement purposes only and does not constitute an admission by Respondent Renown that the law has been violated as alleged in such Complaint, or that the facts as alleged hi such Complaint, other than jurisdictional facts, are true . . . ;*

(d) by preventing private litigants from enforcing FTC consent decrees. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 750, 95 S.Ct. 1917 (1975) ("a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it, even though they were intended to be benefited by it."); *Coca–Cola Bottling Co. of Elizabethtown, Inc. v. Coca–Cola Co.,* 654 F.Supp. 1419, 1437 (D.Del.1987), *aff'd,* 988 F.2d 386 (3d Cir.), *cert. denied,* 510 U.S. 908, 114 S.Ct. 289 (1993) ("Cases involving antitrust consent decrees have hewed closely to the *Blue Chip* rule barring any person not directly participating in the consent decree from suing to enforce its terms."); *United States v. Am. Society of Composers, Authors and Publishers,* 341 F.2d 1003, 1008 (2d Cir.) ("the government is the sole proper party to seek enforcement of government antitrust decrees"), *cert. denied,* 382 U.S. 877, 86 S.Ct. 160 (1965); *Hook v. State of Ariz., Dept. of Corrections,* 972 F.2d 1012, 1015 (9th Cir. 1992) (private parties cannot enforce "the government's rights" under a consent decree).

(e) by preventing the admission of an FTC consent decree to prove liability of a defendant in a private enforcement suit. *See, e.g., Wilson v. Parisi,* 2009 WL 151666, at *2 (M.D. Pa. 2009) ("since Plaintiffs are attempting to use the consent decrees . . ., and the corresponding orders, to prove liability and not for some other purpose, the consent decrees and orders are precluded by Federal Rule of Evidence Rule 408.").

9
NOTICE OF REMOVAL

25. The federal issue is raised by the following allegations in Plaintiffs' Complaint which seek to enforce, and give collateral estoppel effect to, the FTC consent decree on the issue of Renown's liability:

- "By acquiring all cardiology practices in the Reno-Sparks area, Renown was *found to have knowingly violated § 7 of the Clayton Act*, as amended, 15 U.S.C. § 18." Complaint, ¶ 1 (emphasis added).
- "Renown's *confirmed and proven* efforts to monopolize inpatient and outpatient cardiology services in Washoe County violates NRS 598A.060." *Id.*, ¶ 3 (emphasis added).
- "Renown was *determined to be in violation of antitrust legislation by the Federal Trade Commission* ('FTC')…." *Id.*, ¶ 6 (emphasis added).
- "Renown tried to interfere with and *violate specific provisions of the FTC's Decisions and Orders* with an intent to cause financial harm and damages to St. Mary's." *Id.* (emphasis added).
- "*The FTC investigation revealed* Renown's monopolistic behavior *and confirmed* that Renown had successfully *restrained free trade* and business activities in the area of cardiology to the detriment and financial harm of St. Mary's." *Id.*, ¶ 69 (emphasis added).
- **"**The FTC had *determined that Renown blatantly violated § 7 of the Clayton Act*, as amended, 15 U.S.C. § 18." *Id.*, ¶ 72 (emphasis added).
- "The FTC *determined* that Renown's conduct *stifled competition and caused financial harm* to competitors of Renown." *Id*. (emphasis added)
- "The FTC had *determined* that Renown's acquisition of RHP and employment of the RHP, after having acquired SNCA, *did substantially lessen competition and created a monopoly* in relevant markets by eliminating actual, direct and substantial competition

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

between Renown and RHP, by increasing the ability of NHI to unilaterally raise prices for cardiology services, and by reducing incentives to improve cardiology services and products in the Reno/Sparks market *and by causing financial harm to St. Mary's*." *Id.*, ¶ 74 (emphasis added).

- "The FTC . . . ordered Renown not to interfere in the relationships that the departing cardiologists would have with their patients. *Renown has consistently thereafter violated this aspect of the Order*." *Id.*, ¶ 76 (emphasis added).

- "Defendants attempted to *avoid their obligations under the [FTC] Decision and Order* by gaming the protocol allowing for the departure of up to 10 cardiologists from Defendants' employ without retribution." *Id.*, ¶ 79 (emphasis added).

- "Renown has attempted to *avoid its obligations under the FTC Orders and Decision* by failing and refusing to give the SNCA Cardiologists . . . information necessary for these cardiologists to contact their patients." *Id.*, ¶ 79 (emphasis added).

- "Defendants further attempted to *avoid their good faith compliance with the Decision and Order* by directing Renown's General Counsel, Testolin, and/or its counsel Pearl, to inform Monitor McGee [of certain information]." *Id.*, ¶ 80 (emphasis added).

- "Renown attempted to *manipulate the administration of the FTC Order* by giving the 'Monitor' (Judge Charles McGee, ret.) false information." *Id.*, ¶ 91 (emphasis added).

***Gunn* requirement two: The federal issue is "actually disputed."**

26.     The facts showing that the federal issue is "actually disputed" are (i) Plaintiffs, in the excerpts from their Complaint re-printed in ¶ 25 above, improperly seek to enforce, and give collateral estoppel effect to, the

11
NOTICE OF REMOVAL

FTC consent decree on the issue of Renown's liability; and (2) Renown seeks to enjoy its rights under federal law, as set out in ¶ 24 above, to prevent Plaintiffs from improperly seeking to enforce, and give collateral estoppel effect to, the FTC consent decree on the issue of Renown's liability in this case.

### *Gunn* requirement three: the federal issue is "substantial."

27.  Under *Gunn,* at 1066, "it is not enough that the federal issue be significant to the particular parties in the immediate suit." Thus, "the substantiality inquiry . . . looks instead to the importance of the issue to the federal system as a whole." *Id.* The Supreme Court has identified three factors to assist Courts in deciding whether a federal is "substantial."

(a)  A pure question of law is more likely to be a substantial federal question. *Empire Healthchoice Assur., Inc. v. McVeigh,* 547 U.S. 677, 700–01, 126 S.Ct. 2121, 2137 (2006). Here, the issues at hand raise pure questions of law, namely whether, as Plaintiffs allege in the excepts from their Complaint re-printed in ¶ 25 above, Plaintiffs may enforce, and give collateral estoppel effect to, the FTC consent decree on the issue of Renown's liability. For example, Plaintiffs seek to "prove up" their case by alleging that Renown supposedly "was *found to have knowingly violated § 7 of the Clayton Act*, as amended, 15 U.S.C. § 18." Complaint, ¶ 1 (emphasis added) and that "Renown was *determined to be in violation of antitrust legislation by the Federal Trade Commission* (FTC')." *Id.*, ¶ 6 (emphasis added). But, to the contrary, 15 U.S.C.§ 16 provides, "that, in any action or proceeding brought under the antitrust laws, collateral estoppel effect shall not be given to any finding made by the Federal Trade Commission under the antitrust laws." Furthermore, 15 U.S.C. § 16(a) provides that FTC settlements, such as Renown's, that were "entered before any testimony has been taken" are not subject to the statutory rule of 15 U.S.C. § 16(a) under which an FTC decree

is "prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto." Moreover, as noted, an FTC decree is not admissible to prove Renown's alleged liability; nor can Plaintiffs enforce the FTC consent order, as they seek to do.

(b) A question that will control many other cases is more likely to be a substantial federal question. *Gunn*, 133 S.Ct. 1059, 1067. This case, as set forth in ¶¶ 24-25 above, involves a *series* of disputes as to the impact of an FTC consent decree in a subsequent proceeding, thereby assuring that the disposition of this case will broadly control the disposition of numerous other cases.

(c) A question that the government has a strong interest in litigating in a federal forum is more likely to be a substantial federal question. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315-16, 125 S.Ct. 2363, 2368-69 (2005). The FTC, with its enormous enforcement responsibilities,[1] and necessarily limited manpower and funds, now believes that enforcement by individual, formal, corrective proceedings has "become all but inundated by the sheer volume of business activity," and, therefore, "the only hope of coping with the problem [is] to make far greater use of informal methods of law enforcement, encourage use of the much faster consent order procedure and, in appropriate instances, assurances of voluntary compliance."[2] The average cost to the FTC of cases which terminate in a negotiated consent order is one-tenth that of cases which are

---

[1] Year End Meeting of the Federal Trade Commission For the Fiscal Year Ended June 30, 1968, 1968 WL 99042, at *1 (1968).
[2] *Ibid.* at *2.

brought to a cease and desist order by litigation.[3]  On these facts, the legal effect of an FTC consent decree "is an important issue of federal law that sensibly belongs in a federal court." *Id*. Otherwise, a state judgment may undermine the efficacy of the FTC consent decree procedure especially when presented, as here, with a private party seeking a state forum to challenge established federal statutes and case law, as outlined above in ¶ 24, under which private parties cannot enforce FTC decrees; FTC consent decrees do not have collateral estoppel; and FTC consent decrees are not admissible to prove liability. *See Grable*, 545 U.S. 308, 315: "The Government thus has a direct interest in the availability of a federal forum to vindicate its own administrative action."

### *Gunn* requirement four: the federal issue is "capable of resolution in federal court."

28.     The federal issue is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S.Ct. 1059, 1065.  "State and federal antitrust laws complement Congress's intent to move to a less regulated market, because such laws support fair competition." *In re W. States Wholesale Nat Gas Antitrust Litig.*, 715 F.3d 716, 731 (9th Cir. 2013). It would not "disrupt" this arrangement for the federal courts to delineate the impact of a federal agency's consent decree. The State of Nevada does not have state interest in providing a forum to upset the procedures established by Congress and the federal courts  under which private parties cannot enforce FTC decrees; FTC consent decrees do not have collateral estoppel; and FTC consent decrees are not admissible to prove liability.

---

[3]     *Ibid.* at *15.

## VI. SUPPLEMENTAL JURISDICTION.

29. This Court has supplemental jurisdiction over Plaintiffs' state law claims. Those claims arise under the same operative facts as Plaintiffs' federal claims. Therefore, each of Plaintiffs' state-law claims is related to Plaintiffs' federal claims and forms a part of the same case and controversy pursuant to 28 U.S.C. Section 1367(a).

## VII. CONCLUSION

The Removing Defendants respectfully ask that, for the reasons set forth above, the State Court Action be removed from the Second Judicial District Court for the State of Nevada in and for the County of Washoe to the United States District Court for the District of Nevada, Northern Division, 400 S. Virginia Street, Reno, NV 89501 and that the Court grant such other and further relief as in law and justice the Removing Defendants may be entitled to receive.

Dated: December 23, 2013

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: /s/ Tamara Beatty Peterson
KIRK B. LENHARD, ESQ., Bar No. 1437
klenhard@bhfs.com
TAMARA BEATTY PETERSON, ESQ., Bar No. 5218
tpeterson@bhfs.com
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614
Telephone:  702.382.2101
Facsimile:   702.382.8135

STEVE MORRIS, ESQ., Bar No. 1543
SM@morrislawgroup.com
RYAN M. LOWER, ESQ., Bar No. 9108
RML@morrislawgroup.com
MORRIS LAW GROUP
300 S. Fourth St. #900
Las Vegas, NV 89101

*Attorneys for Defendants Renown Health, Renown Regional Medical Center, Nevada Heart Institute, Hometown Health Plan and David Line*

# **CERTIFICATE OF SERVICE**

Pursuant to Fed.R.Civ.P.5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **NOTICE OF REMOVAL** was served via electronic service on the 23rd day of December, 2013 and to the addresses shown below:

Kent R. Robison, Esq.
krobison@rbsllaw.com
Barry L. Breslow, Esq.
bbreslow@rbsllaw.com
Kristen L. Martini, Esq.
kmartini@rbsllaw.com
ROBISON, BELAUSTEGUI, SHARP & LOW
71 Washington Street
Reno, Nevada  89503
*Attorneys for Plaintiffs*

/s/ Erin Parcells
An employee of Brownstein Hyatt Farber Schreck