UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ST. MARY'S REGIONAL MEDICAL CENTER, a Nevada corporation; and ST. MARY'S MEDICAL GROUP INC., a Nevada professional corporation; RICHARD H. BRYAN, JR., M.D., F.A.C.C.; FRANK P. CARREA, M.D., F.A.C.C.; RAM M. CHALLAPALLI, M.D., F.A.C.C.; SRIDEVI CHALLAPALLI, M.D., F.A.C.C.; DEVANG M. DESAI, M.D., F.A.C.C.; ERIC M. DRUMMER, M.D., F.A.C.C.; JOSEPH STEVENSON, D.O., F.A.C.C.; and KOSTA M. ARGER, M.D., <br><br>                      Plaintiffs,<br>    v.<br><br>RENOWN HEALTH, a Nevada non-profit corporation; RENOWN REGIONAL MEDICAL CENTER, a Nevada non-profit corporation; NEVADA HEART INSTITUTE, a Nevada non-profit corporation; HOMETOWN HEALTH PLAN, a commercial health insurance company; DAVID LINE, an individual; JAMES I. MILLER, an individual; KELLY TESTOLIN, an individual; ANDREW PEARL, an individual; and DOES I through X,<br><br>                      Defendants. | Case No. 3:13-cv-00702-MMD-VPC<br><br>ORDER<br><br>(Plaintiffs' Motion for Remand – dkt. nos. 15, 16) |

**I.  SUMMARY**

Before the Court is a Motion for Remand filed by Plaintiffs St. Mary's Regional Medical Center and St. Mary's Medical Group Inc. (together, "St. Mary's"); and Richard R. Bryan, Jr., Frank P. Carrea, Ram M. Challapalli, Sridevi Challapalli, Devang M. Desai, Eric M. Drummer, Joseph Stevenson, and Kosta M. Arger ("the Cardiologists") (dkt. nos. 15, 16). The Court held a hearing on the Motion for Remand on July 10, 2014. As noted

at the hearing, the Court has also reviewed Defendants'[1] opposition (dkt. no. 22) and Plaintiffs' reply (dkt. no. 29), and supplements filed by both parties (dkt. nos. 83, 84). For the following reasons, the Motion is granted.

## II.  BACKGROUND

The following facts are taken from the Complaint and its exhibits. St. Mary's and Renown are health care entities and competitors providing adult cardiology services in the Reno-Sparks area of Nevada. (Dkt. no. 1-1 ¶¶ 29, 117.) The Cardiologists are St. Mary's employees who were formerly employed by Sierra Nevada Cardiology Associates ("SNCA"), a cardiology practice in Reno. (*Id.* ¶¶ 11-18, 32.) On January 1, 2011, a merger between SNCA and Renown became effective. (Dkt. no. 1-1, Ex. 4 ¶ 8.) As a result, 15 cardiologists associated with SNCA became Renown employees. (*Id.* ¶ 9.) Shortly thereafter, in March 2011, Renown acquired Reno Heart Physicians ("RHP"), Reno's other large provider of adult cardiology services. (*Id.* ¶¶ 2, 11.) Similar to the SNCA merger, 17 cardiologists associated with RHP became Renown employees on March 29, 2011. (*Id.* ¶ 12.) Before these mergers, St. Mary's had "enjoyed an excellent working relationship with the cardiologists" in each practice. (Dkt. no. 1-1 ¶¶ 31-32.) However, St. Mary's alleges that after the mergers, its cardiology practice suffered because Renown had "procure[d] and purchase[d] the practices of virtually all cardiologists in the Reno/Sparks area." (*Id.* ¶ 43, 115-30.)

Renown's plans to acquire SNCA and RHP prompted an investigation by the Federal Trade Commission ("FTC"). (*Id.* ¶¶ 56, 66-67.) As a result of the investigation, the FTC alleged that Renown violated section 7 of the Clayton Act. (*Id.* ¶ 73.) Renown settled with the FTC in or around August 2012. (*Id.* ¶¶ 72, 75.) After the settlement and a lawsuit brought by former SNCA cardiologists employed by Renown, eight cardiologists

---

[1] Defendants who opposed remand are Renown Health, Renown Regional Medical Center, Nevada Heart Institute, Hometown Health Plan, and David Line (collectively, "Renown"). Defendants James I. Miller, Kelly Testolin, Andrew Pearl, and Does I through X did not join the removal. (Dkt. no. 1 ¶ 5.)

2

left Renown and began working for St. Mary's.[2] (*Id.* ¶¶ 11-19, 92-93.) These physicians are plaintiffs in this case. (*Id.* ¶¶ 11-18.)

Before bringing this action, the Cardiologists, along with other physicians formerly associated with SNCA, filed two lawsuits in Nevada state court. (*See id.* ¶¶ 11-19.) The first lawsuit resulted in a settlement agreement; the second involved alleged breaches of that agreement. (*Id.* ¶¶ 11-18, 82-100, 141-47; *see* dkt. no. 1-1, Ex. 3.)

The Complaint alleges that Renown engaged in unlawful business practices that harmed Plaintiffs' cardiology business in Washoe County, Nevada. (*See* Dkt. no. 1-1 ¶¶ 1-8.) Specifically, Plaintiffs allege that Renown violated the Nevada Unfair Trade Practices Act by engaging in, and conspiring to engage in, monopolistic behavior; breached a contract and its express and implied covenants of good faith and fair dealing; interfered with existing and prospective relationships; and conspired to harm St. Mary's.[3] (*Id.* ¶¶ 131-93.) Although Plaintiffs confine their claims for relief to state-law issues (dkt. no. 1-1 ¶¶ 131-93), their Complaint refers to federal law, and notes particularly the FTC investigation. (*See id.* ¶¶ 1, 3, 6, 8, 66-67, 69-80, 89, 91, 93, 104-05, 108.) Plaintiffs also attach three documents related to the FTC investigation to their Complaint ("FTC Exhibits"). (Dkt. no. 1-1, Exhs. 4-5.) The FTC Exhibits include a complaint the FTC

---

[2] Additionally, "[o]ne cardiologist formerly affiliated with RHP" left Renown and joined St. Mary's following the FTC settlement. (Dkt. no. 1-1 ¶ 105.)

[3] St. Mary's and the Cardiologists bring separate claims for relief. (Dkt. no. 1-1 ¶¶ 131-93.) First, St. Mary's alleges that Renown Health conspired to engage in, and engaged in, monopolistic behavior in violation of the UTPA, NRS § 598A.060(1)(e)-(f). (Dkt. no. 1-1 ¶¶ 131-39.) St. Mary's next alleges that the Renown Defendants breached a binding settlement agreement to which St. Mary's was a third-party beneficiary (dkt. no. 1-1 ¶¶ 160-65), and the implied and expressed covenants of good faith and fair dealing in that settlement agreement. (*Id.* ¶¶ 166-71.) Finally, St. Mary's alleges that all Defendants interfered with contractual relations (*id.* ¶¶ 172-77) and prospective economic relationships, in part by diverting patients and "depriving" access to patient information (*id.* ¶¶ 178-85), and that they conspired to "plan[] and bring[] harm to St. Mary's." (*Id.* ¶¶ 186-93.) The Cardiologists likewise allege that the Renown Defendants breached a binding settlement agreement (*id.* ¶¶ 140-48), breached the implied and expressed covenants of good faith and fair dealing in that agreement (*id.* ¶¶ 149-53), and interfered with ongoing and prospective economic relationships by "refusing to provide [them with] . . . essential and necessary patient contact information." (*Id.* ¶¶ 154-59.)

drafted for — but never filed against — Renown ("FTC Draft Complaint"), an order requiring Renown to stop enforcing a non-compete clause, and an order that followed Renown's settlement with the FTC. (*Id.*) Plaintiffs note that federal laws regulating antitrust and monopolistic behavior, including those that appear in the FTC Exhibits, are not "claimed bas[es] for relief." (Dkt. no. 1-1 ¶ 1 (citing the Sherman Act, 15 U.S.C. §§ 1-7, and the Clayton Act, 15 U.S.C. §§ 12-19, 21-27).)

### III. LEGAL STANDARD

Federal district courts have "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331. A defendant may remove an action to federal court if the plaintiff could have initially filed the complaint in federal court. 28 U.S.C. § 1441(a). If removal was improper and the federal court lacks jurisdiction, the federal court must remand the case to state court. 28 U.S.C. § 1447(c). Courts should "strictly construe[]" removal statutes "against removal jurisdiction." *Nevada v. Bank of Am.*, 672 F.3d 661, 667 (9th Cir. 2012) (quoting *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002)) (internal quotation marks omitted). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). But "a case may *not* be removed to federal court on the basis of a federal defense." *Id.* at 393. A district court analyzes jurisdiction "on the basis of the pleadings filed at the time of removal without reference to subsequent amendments." *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998).

### IV. ANALYSIS

Renown argues that federal question jurisdiction exists for two reasons. First, Renown contends that allegations of federal-law violations "appear on the face of" the Complaint because the FTC Exhibits contain such allegations and they are therefore adopted by reference pursuant to Fed. R. Civ. P. 10(c). (Dkt. no. 1 ¶ 15.) Second,

4

Renown argues that Plaintiffs' state-law claims necessarily raise a substantial federal issue that the parties dispute, and that a federal court may resolve. (Dkt. no. 1 ¶¶ 23-28 (*citing Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013)).) Both arguments fall short.

### A.  Federal Issue on the Face of the Complaint

Renown argues that the Complaint facially implicates a federal issue because it refers to — and attaches an exhibit alleging — a violation of the Clayton Act. (*See* dkt. no. 1-1 ¶¶ 1, 73; dkt. no. 1 ¶¶ 12-20.) Plaintiffs, however, expressly note that they do not seek relief under the Clayton Act (dkt. no. 1-1 ¶ 1), and every claim for relief listed in the Complaint arises under state law, not federal law. (*See id.* ¶¶ 131-93.) Renown attempts to circumvent Plaintiffs' exclusive reliance on state law by arguing that Rule 10(c) transforms an alleged Clayton Act violation that appears in the FTC Draft Complaint into Plaintiffs' own allegation. (Dkt. no. 1 ¶¶ 12-20; dkt. no. 22 at 3-8.)

Rule 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Despite this broad language, Rule 10(c) "pertains principally to assessing the legal sufficiency of the claims in the complaint." *United States v. Erie Cnty.*, 724 F. Supp. 2d 357, 367 (W.D.N.Y. 2010); *see, e.g.*, *Hartmann v. Cal. Dept. of Corrs. & Rehab.*, 707 F.3d 1114, 1124 (9th Cir. 2013) (*citing* Rule 10(c) in considering whether claims could survive a Rule 12(b)(6) motion to dismiss based on facts alleged in a complaint's exhibits).

Based on the plain meaning of Rule 10(c), Renown contends that Plaintiffs necessarily adopt the FTC's allegation against Renown. (*See* dkt. no. 1 ¶¶ 12-20; dkt. no. 22 at 3-8.) Of the FTC Exhibits, Renown focuses on the Draft Complaint, which alleges that Renown's acquisition of RHP and its "subsequent employment of RHP doctors . . . constitute a violation of Section 7 of the Clayton Act." (Dkt. no. 1-1, Exh. 4 ¶ 27.) Renown contends that by stating that the FTC Draft Complaint "is attached hereto . . . and is made a part hereof," Plaintiffs facially allege that Renown violated the Clayton Act. (Dkt. no. 1-1 ¶ 73.) Accordingly, Renown argues, Plaintiffs' incorporation of the Draft Complaint creates federal question jurisdiction. This argument is untenable.

Renown cites to only one decision that employs Rule 10(c) as the basis for federal question jurisdiction.[4] (*See* dkt. no. 83 (*citing Davoodi v. Austin Indep. Sch. Dist.*, __ F.3d __, No. 13-50824, 2014 WL 2714355 (5th Cir. June 16, 2014)).) In *Davoodi*, the Fifth Circuit held that a complaint listing state-law claims created federal question jurisdiction because one of its exhibits — a Charge of Discrimination that the plaintiff had filed with the Equal Employment Opportunity Commission and the Texas Workforce Commission — alleged violations of federal law. 2014 WL 2714355 at *1-2. The Fifth Circuit reasoned that Rule 10(c) transformed allegations in the Charge of Discrimination into allegations on the face of the complaint. *Id.* at *2.

*Davoodi* is neither controlling nor persuasive and is distinguishable. In contrast to the plaintiff's Charge of Discrimination in *Davoodi*, Plaintiffs did not make the allegation of a violation of federal law that appears in the FTC Draft Complaint — the FTC did. *See id.* at *1; (dkt. no. 1-1, Ex. 4). Whereas the same parties were involved in the Charge of Discrimination at issue in *Davoodi*, Renown asks this Court to read a third party's allegations into the Complaint. *See Davoodi*, 2014 WL 2714355 at *1-2. Despite Renown's insistence that the plain meaning of Rule 10(c) dictates this outcome, the Court agrees with Plaintiffs that Rule 10(c) cannot be stretched to import allegations of a third party into the Complaint to support federal question jurisdiction. To read the allegations in the FTC Draft Complaint as if they belong to Plaintiffs would stretch Rule 10(c) beyond the *Davoodi* court's analysis.

---

[4] The authority Renown cites in its briefing is also inapposite. (*See* dkt. no. 22 at 4.) First, the only controlling case offered, *Hartmann*, involves a Rule 12(b)(6) motion to dismiss, where the court referenced Rule 10(c) in examining exhibits to the complaint to determine the pleadings' sufficiency. 707 F.3d at 1124. Renown's second cited case, *Cortec Industries, Inc. v. Sum Holding L.P.*, also involves a Rule 12(b)(6) motion to dismiss. 949 F.2d 42, 47 (2d Cir. 1991). Finally, in *Island Pipeline, LLC v. Sequoyah Ltd., LLC*, a court in the Middle District of Florida cited to Rule 10(c) in considering exhibits to determine whether a sufficient amount in controversy existed for diversity jurisdiction. No. 3:08-cv-1133-J-32HTS, 2009 WL 413584 at *3 (M.D. Fla. Feb. 18, 2009). Because none of these cases premises federal question jurisdiction on allegations made by a third party and appended to a complaint, they do not support Renown's argument.

1  Moreover, the references Plaintiffs make in their Complaint to the FTC's allegation do not facially create federal question jurisdiction.[5] Although Plaintiffs conceded at oral argument that their Complaint incorrectly referenced "the undisputed fact that Renown did violate section 7 of the Clayton Act" (dkt. no. 16 at 5), the Complaint's reference to a third party's allegation appearing in an exhibit does not warrant federal question jurisdiction. *See Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 343-44 (9th Cir. 1996) (holding that references — both direct and indirect — to federal law in the plaintiff's complaint did not give rise to federal question jurisdiction because the plaintiff "merely incorporate[d] Title VII as one of several similar sources of public policy supporting defendant's state-law claims"); *accord Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1040-41 (9th Cir. 2003) ("[M]ere references by way of example to statements . . . from a disciplinary action issued by a [regulator] are not enough to confer federal question jurisdiction.").

Because Renown cannot rely on Rule 10(c) to assert that the FTC's allegations appear "on the face of [Plaintiffs'] properly pleaded complaint," Plaintiffs do not facially allege a Clayton Act violation by referencing the FTC Exhibits in their Complaint. *Caterpillar*, 482 U.S. at 392. Accordingly, the Complaint does not, on its face, create federal question jurisdiction.

### B. Federal Issue Arising from State-Law Claims

Renown next argues that federal question jurisdiction arises from Plaintiffs' claim that Renown violated Nevada's Unfair Trade Practices Act ("UTPA"), which, in part, forbids entities from engaging in monopolistic behavior. NRS § 598A.060(1)(e)-(f); (*see*

---

[5] During oral argument, Renown tried to analogize Plaintiffs' Complaint to a complaint filed by a pro se, incarcerated plaintiff in *Pattison v. State of Nevada*, No. 3:14-cv-00020, 2014 WL 2506467 (D. Nev. June 3, 2014). This analogy is misplaced. The Court must liberally construe cases filed by pro se litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Viewed under this standard, this Court construed the complaint in *Pattison* to allege claims under 42 U.S.C. § 1983 and the Constitution, including the right to due process. Unlike the sophisticated parties here, the plaintiff in *Pattison* referenced federal law as the basis for his causes of action and did not expressly limit his claims for relief to state law. *Pattison* is simply not analogous.

dkt. no. 22 at 10-19.) Renown suggests that embedded within Plaintiffs' UTPA claims is a claim that Renown violated the Clayton Act. (*See* dkt. no. 1 ¶¶ 24-25.) This argument also falls short.

"For statutory purposes," federal question jurisdiction may exist when state-law claims raise federal issues. *Gunn v. Minton*, 133 S. Ct. 1059, 1064-65 (2013). State-law claims give rise to federal question jurisdiction only where "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting [Congress's] federal-state balance." *Id.* at 1065. However, the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986).

Plaintiffs allege that Renown violated subsections (1)(e) and (1)(f) of the UTPA. (Dkt. no. 1-1 ¶¶ 133-39 (*citing* NRS § 598A.060(1)(e)-(f)).) Subsection (1)(e) prohibits "[m]onopolization of trade or commerce in [Nevada], including . . . attempting to monopolize or otherwise . . . conspiring to monopolize trade or commerce in [Nevada]." NRS § 598A.060(1)(e). Similarly, subsection (1)(f) prohibits the "consolidation, conversion, merger, acquisition of shares of stock or other equity interest [of]," or "the acquisition of any assets of[,] another person engaged in commerce in [Nevada]," if that behavior leads to or furthers monopolization, lessens competition, or restrains trade. NRS § 598A.060(1)(f). These subsections were added to the UTPA in 2001 to clarify that the state has authority to scrutinize mergers and other activities that might lead to monopolization. *See* Minutes of the Meeting of the Assembly Committee on Commerce and Labor, 2001 Leg., 71st Sess. (Nev. Apr. 2, 2001) [hereinafter "April 2 Meeting Minutes"]; *see also* A.B. 152, 71st Sess. (Nev. 2001).

To claim that Renown violated the UTPA, Plaintiffs allege that after acquiring SNCA and RHP, Renown "employed 97% of the cardiologists in the relevant market." (Dkt. no. 1-1 ¶ 120.) Plaintiffs further allege that Renown withheld patient information from the Cardiologists, weakened St. Mary's competitiveness by limiting its ability to

1 admit patients, and created a barrier to entry into the adult cardiology market in the Reno-Sparks area. (*Id.* ¶¶ 122-29.) Because Plaintiffs need not establish a Clayton Act violation to claim that Renown violated the UTPA, this state-law claim is not within the "special and small category" of cases in which federal issues are embedded in state-law claims. *See Gunn*, 133 S. Ct. at 1064 (*quoting Empire Healthcare Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)) (internal quotation marks omitted). Specifically, the Complaint does not necessarily raise a substantial federal issue. *See id.* at 1065. Accordingly, no federal question jurisdiction exists.

### 1. Necessarily Raised

A federal issue is necessarily raised where a state-law claim hinges on its adjudication. *Id.* However, "[w]hen a claim can be supported by alternative and independent theories — one of which is a state law theory and one of which is a federal law theory — federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains*, 80 F.3d at 346.

In both *Grable* and *Gunn*, the Supreme Court concluded that the state-law claims at hand necessarily raised federal issues. *See Gunn*, 133 S. Ct. at 1065; *Grable*, 545 U.S. at 314-15. In *Grable*, the plaintiff brought a quiet title action under state law, claiming that the Internal Revenue Service ("IRS") had seized his property without proper notice, which invalidated the defendant's later acquisition of the property. *Grable*, 545 U.S. at 310-11. The Court reasoned that the plaintiff's action could not be decided without "the interpretation of the notice statute in the federal tax law." *Id.* at 311, 315. The *Gunn* Court likewise concluded that "resolution of a federal patent question [was] 'necessary' to" the plaintiff's state-law legal malpractice claim. *Gunn*, 133 S. Ct. at 1065. To prevail, the plaintiff needed to show that his attorney proximately caused his alleged injury by failing to make an argument about his patent's validity. *Id.* The Court reasoned that this inquiry "require[d] a 'case within a case' analysis of whether, had the argument been made, the outcome of the earlier litigation would have been different." *Id.* Because
///

a court would thus hypothetically analyze a patent law question, the plaintiff's state-law claim necessarily raised a federal issue. *Id.*

In contrast, the Ninth Circuit in *Nevada v. Bank of America Corp.* held that a *parens patriae* lawsuit filed by the Nevada Attorney General did not necessarily raise a federal issue, notwithstanding references to federal law in the Attorney General's amended complaint ("AG Complaint").[6] 672 F.3d at 674-76. The Attorney General alleged that defendant Bank of America violated the Nevada Deceptive Trade Practices Act ("DTPA"), NRS §§ 598.0903 to 598.0999, by "mis[leading] Nevada consumers about the terms and operation of its home mortgage modification and foreclosure processes." *Id.* at 664. Among other remedies, the AG Complaint sought declaratory and injunctive relief under the DTPA. *Nevada v. Bank of Am. Corp.*, No. 3:11-cv-00135 (D. Nev. Feb. 24, 2011) (Amended Complaint, Dkt. nos. 5-2 to 5-3).

Although the Attorney General requested relief under state law, Bank of America removed the action to federal court, citing federal question jurisdiction as one basis for removal, among others. *Id.* (Notice of Removal, dkt. no. 1 at 10-14). Bank of America argued that the Attorney General's DTPA claim hinged on the Making Home Affordable program ("MHA" or "HAMP"), a federal initiative to facilitate home loan modifications, as well as the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e(2)(A), (8). *Id.* Indeed, the AG Complaint referenced both federal schemes: it described HAMP; recounted consumers' attempts to seek relief under HAMP; noted how Bank of America's practices did not align with HAMP's requirements, and how the bank ranked poorly in metrics published by the federal agency that oversees HAMP; and stated that by violating the FDCPA, Bank of America violated the DTPA. *Id.* (Amended Complaint, dkt. no. 5-2 at 2, 8-9, 11, 16-17, 24-29; dkt. no. 5-3 at 30-40).

///

---

[6]The court also held that removal was inappropriate under the Class Action Fairness Act, 28 U.S.C. § 1332(d). *Nevada*, 672 F.3d at 665.

1 Notwithstanding the AG Complaint's references to HAMP and the FDCPA, the Ninth Circuit concluded that the AG Complaint did not necessarily raise a federal issue. *Nevada*, 672 F.3d at 674-75. Citing *Merrell Dow*, the court reasoned that the "mere presence" of HAMP in the Attorney General's state-law claims did not give rise to a federal issue. *Id.* Nor was HAMP a "pivotal" issue, *id.* at 675, because it did not "impinge[] on [the Attorney General's] right to relief." *Lippitt*, 340 F.3d at 1046. With regard to the FDCPA, the court noted the DTPA's "borrowing" provision, which provides that the violation of certain federal statutes amounts to a violation of the DTPA. *Nevada*, 672 F.3d at 675 (*citing* NRS § 598.0923(3)). In light of this provision, the Attorney General's "glancing reference to federal law" did not raise a federal issue. *Nevada*, 672 F.3d at 675. Rather, "[t]he gravamen of the Complaint [was] that Bank of America violated Nevada's DTPA through numerous misrepresentations, some about the HAMP program, and some which also violate the FDCPA." *Id*.

Here, the gravamen of the Complaint is that Renown violated Nevada's UTPA by engaging in, and conspiring to engage in, monopolistic behavior.[7] *See id*.; (dkt. no. 1-1 ¶¶ 131-39). Like the AG Complaint in *Nevada*, Plaintiffs' Complaint refers to federal law. Plaintiffs describe the FTC Exhibits, note that the FTC concluded that Renown violated section 7 of the Clayton Act, and suggest that Renown violated FTC orders.[8] (*See, e.g.*, dkt. no. 1-1 ¶¶ 1, 3, 6, 8, 72-74, 76, 79-80, 91, 108.) Just as in *Nevada*, however, these references do not necessarily raise a federal issue because Plaintiffs' UTPA claims can be decided independently of any federal question. *See Nevada*, 672 F.3d at 674-75;

---

[7] Although Plaintiffs state other claims for relief, Renown clarified at oral argument that the federal issue allegedly raised by the Complaint is whether Renown violated section 7 of the Clayton Act. (*See* dkt. no. 1-1 ¶¶ 140-93.) This analysis thus focuses on Plaintiffs' state-law antitrust allegations.

[8] Although Plaintiffs described Renown's alleged violation of the Clayton Act as "undisputed," (dkt. no. 16 at 5), they conceded at oral argument that this allegation is disputed. The fact that Renown disputes this allegation does not necessarily raise a federal issue. *See Nevada*, 672 F.3d at 675 (concluding that a dispute whether the FDCPA covers mortgage servicers did not give rise to a federal issue). Even if this allegation were undisputed, Plaintiffs would still have to prove the elements of their UTPA claims. *See* NRS § 598A.060(1)(e)-(f).

11

1  *Rains*, 80 F.3d at 346. Whereas a court could not decide the state-law claims in *Gunn*
2  and *Grable* without deciding a federal-law issue, a court need not decide whether
3  Renown violated the Clayton Act or the FTC orders to determine whether Renown
4  violated the UTPA. *See Gunn*, 133 S. Ct. at 1065; *Grable*, 545 U.S. at 314-15. Rather,
5  Plaintiffs would need to show that Renown's mergers and other activities amount to
6  monopolistic behavior proscribed by the UTPA. *See* NRS § 598A.060(1)(e)-(f).

7  Furthermore, the absence of a "borrowing" provision in the UTPA does not mean
8  that the Complaint triggers a federal issue. *Compare* NRS § 598.0923(3) (providing that
9  a knowing violation of certain federal statutes constitutes "deceptive trade practice"
10 under the DPTA), *with* NRS § 598A.050 ("The provisions of [the UTPA] shall be
11 construed in harmony with prevailing judicial interpretations of the federal antitrust
12 statutes.") The UTPA's legislative history clarifies that subsections (1)(e) and (1)(f)
13 "provide in state law the corresponding language existent in the Clayton and Sherman
14 Acts at the federal level." *Sheet Metal Workers Local 441 Health & Welfare Plan v.*
15 *Glaxosmithkline, PLC*, 737 F. Supp. 2d 380, 398 (E.D. Penn. 2010) (*quoting* April 2
16 Meeting Minutes) (internal quotation marks omitted). Even in the absence of a
17 "borrowing" provision, Plaintiffs' allegations about Renown's mergers, provision of patient
18 contact information, and other actions may independently support Plaintiffs' UTPA
19 claims. (*See* dkt. no. 1-1 ¶¶ 131-39.) The "mere presence" of the Clayton Act in the
20 background of Plaintiffs' UTPA claims does not create a federal issue. *Merrell Dow*, 478
21 U.S. at 813. Accordingly, the Complaint does not necessarily raise a federal issue.

22   **2. Substantial**

23 Even if Plaintiff's Complaint necessarily raises a federal issue, it does not raise a
24 substantial federal issue. "The substantiality inquiry under *Grable* [probes] the
25 importance of the issue to the federal system as a whole." *Gunn*, 133 S. Ct. at 1066.
26 "[P]ure issue[s] of law" are more likely to be substantial because a federal court may
27 "settle[] [the issue] once and for all." *Empire Healthchoice Assurance, Inc. v. McVeigh*,
28 547 U.S. 677, 700 (2006) (*quoting* R. Fallon, D. Meltzer, & D. Shapiro, Hart and

12

Wechsler's The Federal Courts and the Federal System 65 (Supp. 2005)) (internal quotation marks omitted). Generally, inquiries that are "merely hypothetical," *Gunn*, 133 S. Ct. at 1067, "fact-bound and situation-specific," *Empire Healthchoice Assurance, Inc.*, 547 U.S. at 701, and simply "novel," *Nevada*, 672 F.3d at 675, are not substantial.

In *Grable*, the Supreme Court held that the federal issue necessarily raised by a state-law quiet title claim was substantial. 545 U.S. at 314-15. The state-law claim hinged on an interpretation of a notice provision in a federal statute governing property seizures carried out by the IRS. *Id.* at 310-11. Noting the federal government's "strong interest in the 'prompt and certain collection of delinquent taxes,'" and in "satisfy[ing] its claims from the [seized] property of delinquents," the Court reasoned that the government "has a direct interest in the availability of a federal forum to vindicate its own administrative action." *Id.* at 315 (citation omitted). This "direct interest," in turn, indicated that the statutory interpretation question was a substantial federal issue. *Id.*

*Gunn*, conversely, did not involve a substantial issue of federal law. *See Gunn*, 133 S. Ct. at 1066-68. Although the patent law question at issue was "significant to the particular parties in the immediate suit," the question failed to stretch beyond them. *Id.* at 1066. Rather, the Court reasoned that the patent law inquiry was "merely hypothetical" — its resolution would inform only the legal malpractice claim at hand. *Id.* at 1067. This inquiry, moreover, would not bind federal courts deciding "nonhypothetical" patent issues in other cases, and state courts engaging in the hypothetical inquiry could "be expected to hew closely to the pertinent federal precedents." *Id.* The hypothetical patent inquiry thus needed "something more [to] demonstrat[e] that the question is significant to the federal system as a whole." *Id.* at 1608.

Like *Gunn*, Plaintiffs' Complaint is "poles apart from *Grable*." *Id.* at 1607 (*quoting Empire Healthchoice Assurance, Inc.*, 547 U.S. at 700) (internal quotation marks omitted). The federal issue allegedly raised by the Complaint involves a case-specific determination of whether Renown violated the Clayton Act. In contrast to *Grable*, which involved a question of statutory interpretation affecting federal income tax collection, the

federal issue here requires a "fact-bound and situation-specific" analysis of Renown's acquisition of cardiology practices in Reno, and its willingness — or lack thereof — to share patient information with Plaintiffs. *Empire Healthchoice Assurance, Inc.*, 547 U.S. at 701; *see Grable*, 545 U.S. at 310-11, 314-15; (dkt. no. 1-1 ¶¶ 131-39).

Renown argues that a substantial federal issue is embedded in the Complaint because the FTC has an interest in how its allegations may be used in state-law cases. (Dkt. no. 1 ¶ 27.) Whereas *Grable* stressed that a federal agency had a significant interest in the statutory interpretation at issue, here, because the FTC Draft Complaint would, at most, serve as an alleged fact to support Plaintiffs' case-specific UTPA claim, no strong agency interest exists.[9] *See Grable*, 545 U.S. at 315. Furthermore, as alleged, the Complaint indicates that the FTC Draft Complaint's allegations are undisputed, leaving nothing but a hypothetical federal issue for a court to decide in the context of a state-law antitrust claim.[10] (*See* dkt. no. 1-1 ¶ 72.) Even if the parties dispute whether Renown violated the Clayton Act, the allegation is merely an insubstantial element of a state-law claim, the "mere presence" of which does not confer federal question jurisdiction on this action. *See Merrell Dow*, 478 U.S. at 813. Finally, Renown raises contentions about "the legal effect of an FTC consent decree" as a defense to Plaintiffs' UTPA claims. (*See* dkt. no. 1 ¶ 27(c).) Renown cannot circumvent the settled rule that a federal defense does not create federal question jurisdiction by repackaging its defense as a substantial federal issue. *See Caterpillar*, 482 U.S. at 393. Despite Renown's arguments, the Complaint does not raise a substantial federal issue.

---

[9]Additionally, the FTC Draft Complaint could support a federal-law antitrust claim independent of the state-law antitrust claims Plaintiffs allege here. Such an "alternative and independent theor[y]" does not create federal question jurisdiction. *Rains*, 80 F.3d at 346; *see Nevada*, 672 F.3d at 675 (reasoning that the references to federal law in the Attorney General's complaint were alternative theories for the claims the Attorney General brought under state law).

[10]Despite Plaintiffs' concession that whether Renown violated the Clayton Act is disputed, this Court must review Plaintiffs' Motion for Remand on the basis of the pleadings at the time of removal. *See Sparta Surgical Corp.*, 159 F.3d at 1213. Indeed, Renown emphasized this point at the hearing.

14

The Court need not reach the remaining *Gunn* factors because the Complaint does not necessarily raise a substantial federal issue. *See Gunn*, 133 S. Ct. at 1064. Renown's second argument fails, and remand is appropriate because no federal question jurisdiction arises from the state-law claims in the Complaint.

## V.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion or reconsideration as they do not affect the outcome of the Motion.

It is ordered that Plaintiff's Motion for Remand (dkt. nos. 15, 16) is granted.

The Clerk shall close this case.

ENTERED THIS 1st day of August 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE